Deborah J. SCHNEIDER, Plaintiff-Appellee Cross–Appellant,

v.

The CITY OF ATLANTA (Bureau of Corrections), Defendant–Appellee,

and

J. D. Hudson, Ind., etc., Defendant–Appellant Cross–Appellee.

No. 78–3540.

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1980.

Rehearing Denied Dec. 8, 1980.

Ferrin Y. Mathews, Bernard R. Thomas, Pamela J. Robinson, Atlanta, Ga., for Hudson, etc.

Joseph H. King, Jr., Atlanta, Ga., for plaintiff–appellee cross–appellant.

Bernard R. Thomas, Associate City Atty., Atlanta, Ga., for City of Atlanta.

Before KRAVITCH, FRANK M. JOHNSON, Jr. and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Deborah Schneider filed suit against the City of Atlanta, the Bureau of Corrections of Atlanta, and the Director of the Bureau of Corrections, J. D. Hudson, alleging (1) that she suffered racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983 and (2) that she was constructively discharged for exercising her First Amendment rights in violation of § 1983 and the Fourteenth Amendment.[1] At trial, the jury found against her on the claim of racial discrimination, but returned a verdict in her favor on the claim that she was constructively

---

1. She also alleged race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Her Title VII claims were to be tried before the court, while her §§ 1981 and 1983 claims and the First Amendment issue were tried before a jury. Since she received a favorable verdict with respect to the First Amendment claim, she waived her Title VII claims. The district court directed entry of a final judgment as to the §§ 1981, 1983 and First Amendment claims in accordance with Fed.R.Civ.P. 54(b).

discharged for exercising her First Amendment right of freedom of speech, finding that she suffered $6,000 actual damages. Judgment in the amount of $6,000 was initially entered in plaintiff's favor against the City of Atlanta and Director Hudson.

Because this case was tried before the Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that municipalities are "persons" under § 1983 and are, therefore, subject to suit under that statute), the district court granted the city's motion for judgment notwithstanding the verdict in view of our *en banc* decision in *Davis v. Passman*, 571 F.2d 793 (5th Cir. 1978), *rev'd* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), in which we held that a direct cause of action for sex discrimination would not be implied under the due process clause of the Fifth Amendment.[2] After *Monell* was decided, the plaintiff moved the district court to reinstate its judgment against the City of Atlanta under a § 1983 theory, since the district court had previously determined that the jury's verdict against Director Hudson, which found a violation of First Amendment rights, could be predicated under either an implied cause of action directly under the Constitution or § 1983. The district court denied this motion, finding that plaintiff had presented no evidence at trial tending to show that the violation of her First Amendment rights occurred in furtherance of an official policy or custom of the City of Atlanta.

Director Hudson brings this appeal contending (1) that the evidence was insufficient to support the jury's verdict of constructive discharge because of plaintiff exercising her First Amendment rights and (2) that the district court improperly instructed the jury, over objection, as to the standard to be applied in determining the

extent of control a public employer may exercise over the expressions of its employees.[3] Plaintiff cross–appeals contending (1) that the City of Atlanta should be liable under § 1983 because the conduct of Hudson constituted a policy of the city and (2) that the district court should have enhanced the award of attorney's fees, which was based on an hourly rate, because of the contingent nature of the recovery. Because we conclude that the district court committed plain error in submitting to the jury the question of whether plaintiff's First Amendment rights were infringed, we reverse and remand.

I.

Deborah Schneider was employed intermittently from September 1973 through December 1975 as a Correctional Officer I with the City of Atlanta's Bureau of Corrections. Her duties there consisted primarily of guarding prisoners housed in the detention facilities of the city. Concerned with what she considered to be improper treatment of the prisoners and unsatisfactory conditions of employment, including the arbitrary changing of days off without adequate notice and the noncompliance with established grievance procedures, the plaintiff in September of 1975 suggested to several other officers the possibility of a "sick out" to protest these conditions. Such a "sick out," however, never occurred. Approximately two weeks later plaintiff was promoted to a supervisory position of "acting sergeant." Almost immediately after her promotion was announced, however, Director Hudson became aware of Schneider's past criticisms of jail policies and, specifically, of her attempts to organize a "sick out," and, as a result, rescinded the promotion and transferred her to the city prison farm. The record reflects that such a transfer was considered a form of punishment. There-

2. The district court allowed plaintiff to bring suit against the city under a cause of action predicated directly under the First and Fourteenth Amendments to the Constitution.

3. The record shows that although the defendant objected to plaintiff's requested charge on

this point, the district court submitted an instruction which was a combination of plaintiff's original request and a requested instruction by defendant. Defendant made no objection to the instruction as submitted to the jury.

after, she alleged that her life was made increasingly miserable. Her shift was changed repeatedly at the prison farm, and her day off requests were repeatedly denied. Also she was not allowed to take any of her accrued vacation days. The plaintiff testified that she resigned after it became clear she no longer had a future as a corrections officer. This, she contends, constituted a constructive discharge.

## II.

The district court instructed the jury as follows:

"Now, with regard to the second claim in this case, ladies and gentlemen, charging a denial of freedom of speech, the plaintiff must prove by a preponderance of the evidence that the defendants knowingly and intentionally violated clearly established First Amendment rights of the plaintiff by retaliating against her in terms and conditions of employment because she exercised otherwise protected First Amendment rights.

\* \* \* \* \* \*

"In order, ladies and gentlemen, for the plaintiff to establish that she was constructively discharged, she must prove by a preponderance of the evidence that the sole basis for her resignation was the acts of the defendants which were such as to create working conditions so intolerable that she was forced into involuntary resignation.

\* \* \* \* \* \*

"[T]he real question, is therefore; not whether or not she was discharged, but whether or not she was discharged, if she was discharged, in reprisal or punishment for having violated or exercised her right to freedom of speech.

"I charge you, ladies and gentlemen, that as a general rule, a person has an absolute right to express his or her opinion on any subject, and to advocate any course of action he or she deems appropriate. This is part of the basic constitutional guarantee of freedom of speech. This

right of speech extends even to the general advocacy of a course of action which might be against some law, except in the very unusual case where such advocacy is directing, directed toward inciting or producing imminent and immediate unlawful conduct, and is likely to incite or produce such action.

"I charge you, ladies and gentlemen, in this respect, that a governmental employer may exercise some control over the expressions, public expressions of its employees, when it is in the interest of the state in promoting efficient public service.

"I charge you, however, that where a governmental agency does exercise control over the expression of its employees, such exercise must be limited to the minimum necessary to carry out the public interest. And before a public employer can exercise such control over the expressions of employees, there must be a *clear and present danger that such expression, if allowed, will endanger the public interest.*" (Emphasis added.)

■ Appellant contends that the district court used an incorrect standard in charging the jury as to the First Amendment claim. We agree. In determining whether a public employer may inhibit its employees' rights of free speech, a balancing test is to be applied. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Porter v. Califano*, 592 F.2d 770, 772 (5th Cir. 1979); *Smith v. United States*, 502 F.2d 512, 516–17 (5th Cir. 1974); *Battle v. Mulholland*, 439 F.2d 321, 324 (5th Cir. 1971).

■ In *Pickering*, the Court stated: "The problem in any case is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568, 88 S.Ct. at 1735. This is the test that should have been applied in this case. Moreover, the question of whether the plaintiff was constructively discharged for

reasons that impermissibly abridged her First Amendment rights is ultimately a question of law for the trial court. *Williams v. Board of Regents of University System of Georgia*, 629 F.2d 993, 1003 (5th Cir. 1980) (holding that the "ultimate balancing of interests of citizen and state with regard to first amendment protection . . . remains in the sphere of the court."). Specifically, it is a question of law whether plaintiff's attempt to organize a "sick out" among her fellow employees is protected speech under the First Amendment.[4] *See Pennekamp v. Florida*, 328 U.S. 331, 335, 66

4. *See, e. g., Bertot v. School Dist. No. 1, Albany County, Wyoming*, 522 F.2d 1171, 1177–84 (10th Cir. 1975) (holding first that the jury's verdict against plaintiff was incorrect as a matter of law because the record evidence established that the predominant reason for the nonrenewal of plaintiff's contract as a teacher was her activity with an underground student newspaper, and, second, having so held as to that question, the appellate court determined the legal question whether her acts were within the protection of the First Amendment by applying the balancing test of *Pickering*. The trial court had charged the jury that plaintiff's activities relating to the newspaper were "constitutionally protected so long as they did not lead to a material or substantial disruption of class work, or did not involve substantial disorder or invasion of the rights of others", *id.* at 1183). *Accord, Porter v. Califano*, 592 F.2d at 779–81 (stating that in reviewing agency action—the suspension of a government employee allegedly because of exercising her First Amendment rights—under the Administrative Procedure Act, the district court must conduct the balancing test prescribed in *Pickering* after determining the facts to its satisfaction); *Ayers v. Western Line Consolidated School Dist.*, 555 F.2d 1309, 1315–16 (5th Cir. 1977), *vacated on other grounds sub nom. Givhan v. Western Line Consolidated School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (holding that whether an expression by a public employee is constitutionally protected is a question of ultimate fact for the court and not subject to limited review under the "clearly erroneous" standard). As an ultimate fact, determining whether plaintiff Schneider's attempt to organize a "sick out" constituted protected speech is but a legal inference drawn from the basic facts in the case and is reviewable as any other legal ruling or conclusion. *Cf. Jersey Land & Development Corp. v. United States*, 539 F.2d 311, 315 (3rd Cir. 1976).

Although the balancing test prescribed in *Pickering* is a question of law for the court, this circuit has recognized that in striking this balance between the interests of a governmental employee as a citizen and the interests of the government in promoting efficiency of the services it performs through its employees, there are factual matters appropriate for determination by a jury. For example, in order for the balance to be struck in favor of a governmental employer, the government must "clearly demonstrate that the employee's conduct substantially interferes with the discharge of duties and responsibilities inherent, in [governmental] employment." *Smith v. United States*, 502 F.2d 512, 517 (5th Cir. 1974). Moreover, it is necessary for a plaintiff to show that the asserted retaliation by a governmental employer was motivated specifically by what has been determined to be protected speech. *Lindsey v. Board of Regents of University System of Georgia*, 607 F.2d 672, 676 (5th Cir. 1979). The district court should, therefore, submit to the jury these factual issues inherent in the balancing test, but the ultimate balancing remains in the province of the court. *See, e. g., McGill v. Board of Education of Pekin Elementary School Dist.*, 602 F.2d 774, 777 (7th Cir. 1979) (trial court instructed the jury that a teacher's criticism would not be constitutionally protected if "the teacher's actions materially and substantially interfere with the operation of the education process in the classroom"); *Bertot v. School Dist. No. 1*, 5§2 F.2d at 1183 (jury instructed that plaintiff's conduct was constitutionally protected so long as it "did not lead to a material or substantial disruption of class work, or did not involve substantial disorder or invasion of the rights of others"). The use of special interrogatories to the jury are especially appropriate in resolving the factual issues inherent in the balancing process envisioned by *Pickering*. However, any factual issues decided by a jury that might relate to ultimate questions of law are nonetheless subject to careful review by the district court and this court which are invested with the power to "conduct an independent review of constitutional claims when necessary." *Jenkins v. Georgia*, 418 U.S. 153, 160, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974).

With respect to the proposition that (1) the determination of what constitutes protected speech under the balancing test of *Pickering* is a question of law for the court, and (2) the determination of whether a discharge, refusal to rehire, suspension, transfer to less desirable duties or location, etc. is a question for the finder of fact, *see also Bates v. Dause*, 502 F.2d 865 (6th Cir. 1974); *Birdwell v. Hazelwood School Dist.*, 491 F.2d 490 (8th Cir. 1973); *Illinois State Employees Union, Council 34, Etc. v. Lewis*, 473 F.2d 561, 572–74 (7th Cir. 1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *London v. Florida Department of Health and Rehabilitative Services*, 448 F.2d 655 (5th Cir. 1971), *cert. denied*, 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131 (1972).

S.Ct. 1029, 1031, 90 L.Ed. 1295 (1946), wherein the Supreme Court stated:

> "The Constitution has imposed upon this Court final authority to determine the meaning and application of those words of that instrument which require interpretation to resolve judicial issues. With that responsibility, we are compelled to examine for ourselves the statements in issue and the circumstances under which they were made to see whether or not they do carry a threat of clear and present danger to the impartiality and good order of the courts or whether they are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect."

In deciding this question, the court must apply the balancing test enunciated in *Pickering*. If plaintiff's conduct was constitutionally protected, then, it is, of course, a question of fact whether she was constructively discharged because of it. Therefore, we hold that the district court committed plain error in submitting to the jury the question of whether the plaintiff's First Amendment rights were violated by a constructive. discharge.[5] We do not decide whether the plaintiff's activity in attempting to organize a "sick out" was constitutionally protected speech under the First and Fourteenth Amendments, because the parties did not present evidence below or submit arguments to us concerning how the *Pickering* balance should be struck.

## III.

Because we remand this case to the district court for a new trial, it is not necessary for us to decide the *Monnell* issue or the question concerning enhancement of attorney's fees over hourly rates because of the presence of a contingent fee contract.

Nonetheless, with respect to possible liability of the City of Atlanta, the Supreme Court in *Monnell* indicated that a municipality may be sued under § 1983 for a city official's "edicts or acts [that] may fairly be said to represent official policy . . . ." 436 U.S. at 694, 98 S.Ct. at 2038. At least in those areas in which Director Hudson, alone, "is the final authority or ultimate repository of [city] power his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the [city] may be held responsible under § 1983." *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980). *See generally*, Schnapper, *Civil Rights Litigation After Monnell*, 79 Colum.L.Rev. 213, 215–19 (1979).

It is a question of fact whether the City of Atlanta delegated to Director Hudson the final or ultimate authority to make personnel decisions in the Bureau of Corrections with respect to work assignments, transfers, days off, discipline, the hiring and firing of employees, and restrictions concerning employees' rights to engage in certain free speech activity.[6]

With respect to the attorney's fee issue, it is sufficient to note that a district court is required to consider in setting attorney's fees whether the fee is fixed or contingent. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). Moreover, this court has very recently intimated that an attorney's standard hourly billing rate should probably be enhanced somewhat for an award of fees under § 1988 due to the contingent nature of such an award. *Harris v. City of Fort Myers*, 621 F.2d 1321, 1325 (5th Cir. 1980); *Knighton v. Watkins*, 616 F.2d 795, 800–01 (5th Cir. 1980); *accord, Wolf v. Frank*, 555 F.2d 1213, 1218 (5th Cir. 1977) (in stockholder's derivative action where fee was contin-

---

5. The error affected the fairness of the trial and seriously prejudiced Hudson's right to a fair trial. *See Liner v. J. B. Talley and Co., Inc.*, 618 F.2d 327, 329–30 (5th Cir. 1980); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975); Fed.R.Civ.P. 61.

6. His title indicates such authority was delegated to Director Hudson, but there are no facts in the record clearly showing this.

gent on success, regular reasonable hourly fees should be enhanced by 33%).

REVERSED and REMANDED.