**Michael Ray MULLINS,
Plaintiff-Appellant,**

v.

**The CITY OF HUNTSVILLE, ALA-
BAMA, a Municipal Corporation,
Defendant-Appellee,**

**and**

**Sal Vizzini, Defendant.**

**No. 85–7311.**

United States Court of Appeals,
Eleventh Circuit.

April 7, 1986.

Jimmy Alexander, Alexander, Corder & Plunk, Athens, Ala., for plaintiff-appellant.

Glenn F. Manning, Watts, Salmon, Roberts, Manning & Noojin, Huntsville, Ala., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

This is an action brought by appellant Michael Ray Mullins against the City of Huntsville, Alabama under 42 U.S.C. § 1983, challenging certain actions taken by the city against him in his capacity as a municipal police officer. After hearing argument, the district court granted summary judgment in favor of the appellee city finding no basis for municipal liability under § 1983 based upon *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We reverse and remand for further proceedings.

## BACKGROUND

As an appeal from an order granting a motion for summary judgment, our task is to view all of the evidence in a light most favorable to the non-moving party. *See, e.g., Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). From this perspective, it appears that the appellant joined the City of Huntsville police department as a police officer in 1973. The instant controversy arises from incidents commencing in the spring of 1982 when the appellant was ordered by Captain Ronald Rickles of the police department to not appear in uniform at a Food World supermarket where his wife worked, whether on or off duty, unless summoned there on official police business. Mullins was also transferred at that time to a different patrol zone from his previous zone of over eight years, which contained the Food World in question. The impetus for such action apparently was an anonymous telephone call to the office of Police Chief Sal Vizzini complaining that Mullins was spending too much time in the Food World in uniform. Although Mullins requested that he be told the identity of the complainant, the police department refused.

In response to the order banning him from the Food World, Mullins pressed for relief from within the police department by requesting meetings with his superiors, including Captain Rickles and Chief of Police Vizzini. Ultimately, appellant's written request to discuss the matter with Vizzini was granted with the meeting being scheduled for June 28, 1982. Mullins arrived for the meeting at Vizzini's office with a tape recorder for recording their conversation. Vizzini, however, refused to talk with Mullins so long as he sought to record their conversation and directed appellant's removal from his office. At that point, Captain Rickles escorted the appellant to his own office, and during the course of their conversation, Rickles confiscated a tape from Mullins' tape recorder and directed Mullins to return to duty in his newly assigned zone.

On June 29, 1982, Mullins was called to Rickles' office and was directed to take back possession of the tape, which contained a recording of an earlier conversation between Mullins and some of his superior officers. When Mullins refused, Rickles suspended him without pay for failure to obey a direct order and directed that he was not to perform any further police functions. At that point, Mullins contacted the city attorney's office, as well as the city personnel department, to inquire as to the propriety of Rickles' actions. Mullins was informed by both sources that "Police Chief Vizzini was in charge of the Police Department." [Rec. 465]. Sometime thereafter, Sergeant N. Sanders, acting through chain of command headed by Vizzini himself, located Mullins at the Food World and directed him to immediately report for duty at the jail. Mullins indicated a need at that point to first speak with his attorney. Later that day, Mullins was again contacted at his home and was told that he was to report to the jail the following morning, June 30, 1982, and that he was to perform non-sworn duties while not in uniform until this matter was resolved. Prior to this scheduled reporting time at the jail the following morning, Mullins became ill and did not report. The appellant did ultimately receive a doctor's excuse, and on July 12, 1982, he reported for duty at the jail. Appellant Mullins remained on jail duty until July 20, 1982, at which time he was restored to regular duty. During the time he was assigned to jail duty, although Mullins did not suffer a loss in pay, he did not engage in any of the duties that a sworn officer ordinarily would undertake, such as making arrests.

In the meantime, sometime before formal charges were filed, Chief Vizzini called the appellant into his office for an informal, "off the record" discussion to ascertain Mullins' "attitude." Vizzini testified that he sought to determine if Mullins had a "good" attitude, and if so, he sought to work out the problems without making a "big issue" out of them. At the meeting, however, Mullins sought assurances that

he would receive his old zone back, and nothing was informally worked out.

On July 16, 1982, Chief Vizzini signed a "Notice of Preliminary Hearing" directing Mullins to appear on July 27, 1982, for a hearing regarding potential disciplinary action. The notice indicated that the hearing sought "to solicit information to determine if disciplinary action is warranted and/or if you violated any other rules or regulations" in relation to Mullins' alleged failure to follow a direct order. The direct order allegedly disobeyed by Mullins was not Rickles' original order directing him to take back his tape, which precipitated this incident, but rather was Mullins' alleged failure to report to the jail "right away" as ordered by Sergeant Sanders in the Food World on June 29, 1982.

The hearing was subsequently held on July 27, 1982, with Vizzini designating Assistant Chief of Police Schade to act as the hearing officer. During the course of those proceedings, the appellant was not permitted to have his attorney participate on his behalf. The hearing officer found that the appellant had refused to obey a direct order by seeking the advice of his counsel prior to reporting to the jail as directed by Sergeant Sanders. In addition, the hearing officer found that by inquiring of the city attorney's office as to Captain Rickles' authority to suspend him without pay, the appellant had violated the Huntsville Police Department Regulation prohibiting an officer from seeking assistance from outside the department as to personnel circumstances. Upon consideration of

these findings, on July 29, 1982, Chief of Police Vizzini suspended the appellant for ten days without pay and prohibited him from subsequently engaging in any outside employment until further notice.

### THE PROCEEDINGS BELOW

Based upon this background, the appellant brought this action as a multi-count complaint founded upon numerous alleged deprivations of his constitutional rights under color of state law in violation of 42 U.S.C. § 1983.[1] The defendant City of Huntsville ultimately filed a motion for summary judgment, to which the plaintiff/appellant responded. After conducting an oral hearing and taking the motion under advisement, the district court issued a one and one-half page order granting the defendant's motion "for the reasons dictated into the record by the Court" during the oral hearing. During that court session, the district court indicated its inclination toward granting the motion as follows:

> But, I don't mind giving you my candid judgment at this time, that being on what I have read and seen and heard and studied, is that I think that summary judgment is due to be granted the City of Huntsville, with respect to all claims asserted by Mr. Mullins in this complaint, because that the City of Huntsville, assuming that all of these things are true, with exception of the conclusory allegations, that there would be no liability on the City of Huntsville, as a matter of law, under *Monell* and its progeny. And I don't think that there is any—the plead-

1. Through various amendments, the appellant eventually sought to pursue only the following counts, briefly summarized below:

Count II—Denial of procedural and substantive due process for his alleged suspension without pay and without notice on June 29, 1982.

Count III—Alleged retaliation against the plaintiff for exercise of his first amendment rights concerning his criticism of superior officers for their punitive disciplinary conduct.

Count IV—Retaliation for exercising Mullins' first amendment rights in relation to his attempt to contact the assistant city attorney in relation to his previous suspension and removal without notice.

Count V—Denial of procedural due process during a Board of Inquiry hearing dated July 27, 1982, *inter alia,* for failure to give Mullins notice of the charges and wrongdoing urged against him and for prohibiting plaintiff attaining and utilizing participation of his counsel.

Count VI—Denial of procedural and substantive due process rights as to the plaintiff's demotion from municipal law enforcement officer to civilian jailhouse employee on July 12, 1982, without prior written notice or a hearing.

ing is sufficient to involve the City of Huntsville in that. And you can't rely on bald·and conclusory allegations. [Tr. 55]. Mullins filed a timely notice of appeal to this court.

### THE MERITS

We start our analysis with the necessary observation that the propriety of granting a motion for summary judgment is a matter to be independently reviewed by this court. *Morrison v. Washington County, Alabama,* 700 F.2d 678 (11th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Summary judgment can only be sustained where the moving party has carried its burden of demonstrating the absence of a genuine issue as to any material fact, when the evidence is viewed in a light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact, of course, must be resolved against the movant. *Hayden v. First National Bank of Mt. Pleasant, Texas,* 595 F.2d 994 (5th Cir.1979).

We also observe that we commence our analysis at a decided disadvantage. While "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56," FED.R.CIV.P. 52, the district court provided virtually nothing in the way of findings or analysis upon which to appraise its reasoning in granting summary judgment. The lower court merely granted summary judgment for the "reasons dictated into the record." We have carefully scrutinized the record and have found only the brief reference to the *Monell* decision cited above as a possible basis for the district court's decision. As this court has noted in the past:

> When an order granting summary judgment is "opaque and unilluminating as to either the relevant facts or with respect to the merits of [a] claim," (*Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972)), an appellate court has no basis upon which to affirm the judgment. Until we have before us a fuller explication of the relevant law and its relation to the facts here, we cannot affirm the grant of summary judgment. . . .

*Granite Auto Leasing Corp. v. Carter Manufacturing Co.,* 546 F.2d 654, 656 (5th Cir.1977). The instant case falls within such a posture. Simply stated, we have virtually nothing to affirm in this case.

This conclusion is further bolstered by our own review of the record as argued by the parties. The city contends that under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it can have no liability because the disciplinary actions taken here did not constitute "official policy or custom." We find no merit in the appellee's contentions in this regard as raised on a motion for summary judgment. Huntsville City Ordinance 80–11 conferred on the Police Chief, as a department head, the authority to undertake disciplinary activity over police department employees. Chief Vizzini testified that he held authority to make disciplinary personnel decisions and to ensure procedural compliance with the ordinance. In addition, former city councilman Billy Tallent testified by way of affidavit that the Huntsville city council repeatedly refrained from becoming involved in police department personnel matters expressing the view that such decisions fell exclusively within Chief Vizzini's domain, despite numerous instances of objectionable conduct on his part having been brought to their attention. Tallent also testified that the city council was aware of, and tacitly approved, the Huntsville Police Department Rules and Regulations governing police conduct authorized by Chief Vizzini himself, despite Tallent's repeated attempts to have the city council review those regulations. Such testimony indicates questions of fact remain as to Chief Vizzini's final authority to act on behalf of the city in making disciplinary decisions and thereby set official policy. *See Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 705 (11th Cir.1985); *Wilson v. Taylor,* 733 F.2d 1539, 1545–47 (11th Cir.1984); *Berdin v. Duggan,* 701 F.2d 909, 914 (11th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78

L.Ed.2d 230 (1983); *Williams v. Valdosta,* 689 F.2d 964, 969 (11th Cir.1982); *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334–35 (11th Cir.1982); *Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir.1980).[2] The grant of summary judgment on *Monell* grounds was improper.

The parties have alluded to, and the appellee has attempted to argue, other potential bases upon which the lower court might have based its decision. We nevertheless view the district court's decision as based solely upon the *Monell* issue, and leave those arguments for review in the first instance by the district court.[3]  Had

we been afforded the benefit of the lower court's reasoning on *any* issue, we might have been provided with an alternate line of analysis that would sustain its decision. Left as we are, however, with merely the hint of a *Monell* issue, our own analysis leads to the conclusion that questions of material fact remain for resolution precluding the entry of summary judgment.

REVERSED and REMANDED.

**2.** The new Fifth Circuit, sitting *en banc,* has rejected this line of authority primarily represented by *Schneider* to the extent that such cases "would permit policy or custom to be attributed to the city itself by attribution to any and all city officers endowed with final or supervisory power or authority." *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (*en banc*), *modifying,* 728 F.2d 762 (5th Cir.1984) (*en banc*), *cert. denied,* —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Under that position, for municipal liability to attach the city officer's final authority must be over decisions directly related to policy matters, i.e. final authority to "set goals and to structure and design the area of delegated responsibility...." 728 F.2d at 769. The appellee asserts that the Eleventh Circuit is "in accord" with the Fifth Circuit's stance. The case law cited to us, however, emphasizes finality in and of itself as indicative of policy-making ability, and *Schneider* and its progeny are unquestionably still viable authority in this circuit. *See, e.g., Ancata,* 769 F.2d at 705 n. 9 (11th Cir.1985) (citing *Hearn* for the "clear" proposition that "where a governmental entity delegates the final authority to make decisions then those decisions necessarily represent official policy").

At any rate, we need make no broad pronouncements as to the reach of *Monell* under the circumstances found here. This circuit has consistently found that authority vested in municipal officials to make final personnel decisions is the type of decisionmaking for which a municipality can be held liable under *Monell. See Wilson,* 733 F.2d at 1545 (city could be held liable for chief of police's dismissal of officer where the chief had the final or ultimate authority within the local government to make the decision that caused the violation); *Berdin,* 701 F.2d at 914 (same as to mayor); *Williams,* 689 F.2d at 969 (11th Cir.1982) (same where city manager was vested with final authority over personnel decisions in relation to demotion of employee). And even if *Bennett* was authoritative in this circuit, we have no doubt that the

evidence presented by Mullins below was sufficient to create an issue of fact to preclude entry of summary judgment on the *Monell* issue under its standards as well.

**3.** One argument raised by the appellee relates solely to the claim asserted in Count II. *See supra* note 1. The city urges that in suspending Mullins without pay on June 29, 1982, Captain Rickles in reality acted contrary to, rather than in furtherance of, city policy and that to impose liability for his unauthorized actions as a subordinate employee would be to improperly base liability solely upon *respondeat superior. See, e.g., Gilmere v. City of Atlanta,* 774 F.2d 1495, 1502–03 (11th Cir.1985) (*en banc*). This question is close, as the record does indicate that Rickles may have acted in excess of his authority in suspending Mullins without pay. Nevertheless, we see the city's argument as hinging upon two propositions that we are not ready to accept on this record—that Vizzini was in no way personally involved in this suspension decision and that an unconstitutional deprivation could stem only from a suspension by Rickles without pay. First, we note that Chief Vizzini had extensive personal involvement throughout the handling of this matter, and he clearly was personally involved in the circumstances leading up to Mullins' June 29 suspension, although the exact degree of his involvement in this specific decision is not clear. And both the city and Vizzini have admitted that Rickles had authority to relieve an officer from duty with pay under both the departmental rules and practice within the department. The district court below indicated that such a "suspension" could be an actionable demotion despite no loss of pay. Transcript of Summary Judgment Hearing, at 22. We express no opinion as to the ultimate outcome on either of these issues. Rather, based upon this record and in light of our decision to remand the remaining claims, we find remand of Count II for full factual development and consideration with the remainder of the case appropriate.