**S. Dennis JOINER and Charles Joiner, Jr., Plaintiffs,**

v.

**CITY OF RIDGELAND, MISSISSIPPI, A Municipality and Political Subdivision of the State of Mississippi, Defendants.**

**Civ. A. No. J86–0064(B).**

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 31, 1987.

James Herring, Canton, Miss., for plaintiffs.

Richard M. Edmonson, Dewitt L. Fortenberry, Jr., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

The Court has before it the Motion of the City of Ridgeland for Summary Judgment on Dennis and Charles Joiner's allegations

that the city subjected them to an illegal arrest. The Joiners claim damages because of the arrest both under 42 U.S.C. § 1983 and as a *Bivins*-type direct action under the Fifth and Fourteenth Amendments of the United States Constitution. The Joiners were arrested pursuant to municipal arrest warrants signed not by a municipal court judge as required by law, but rather by a part-time municipal court clerk. The clerk signed the warrants at the insistence of Milton Case, the city attorney. Case instigated the arrests on behalf of a private client, whom he represented in an ongoing civil dispute with the Joiners. The Joiners seek to hold the City of Ridgeland liable for Case's action. The Court finds, however, that Case's action did not represent official policy for the purposes of § 1983. The Court holds further that the Joiners have no *Bivens*-type claim. The Court therefore grants summary judgment for the City.

## I. UNDISPUTED FACTS

The facts of the arrests are not disputed. The Joiners own the Quick Change Oil and Lubrication Company located on the corner of County Line Road and Ridgewood Road in Ridgeland, Mississippi. For several years their business used land adjacent to their leasehold as a common parking area and driveway. Ownership of the lands changed hands, however, and the adjacent land was purchased by Shoney's, Inc. to build a restaurant and hotel. The Joiners sued Shoney's in state chancery court to block the construction, alleging it would wrongfully obstruct the common parking area and driveway. Milton Case represented Shoney's in that case.

On Saturday, November 9, 1985, a construction crew began to destroy the parking area. Charles and Dennis Joiner parked a van on the area to stop the work and refused to move it. The construction foreman contacted Milton Case for directions. Case took the foreman to the Ridgeland police station and helped him fill out affidavits charging the Joiners with trespassing. On the basis of the affidavits, the part-time municipal court clerk, Jerry Moore, drew up arrest warrants for the Joiners. Since the municipal court judge was unavailable to sign the warrants, Case directed Moore to sign them. Although he questioned his authority to do so, Moore signed the warrants in compliance with Case's instructions.

Case's instructions to Moore were illegal. Under Mississippi law only judges and justices of the peace are authorized to sign warrants. *Miss. Code Ann.* §§ 99–15–1 (1972), 99–15–5 (Supp.1986).

Pursuant to the warrants, city police arrested the Joiners and towed their van from the construction site. The Joiners were taken to the police station, where they made bail and were released.

On March 17, 1986, the Joiners appeared before the municipal court to answer the trespassing charges. The municipal court quashed the warrants against them, but the Joiners waived reissuance of the warrants and consented to a trial of the charges. The municipal court entered judgment dismissing the case.

At the time of the arrests, Case and his law partner, Steve Smith, comprised the firm Smith & Case, which had been appointed to serve as the regular city attorney for the City of Ridgeland.

## II. SECTION 1983 LIABILITY

The City of Ridgeland asserts several grounds for summary judgment on the § 1983 claim. The official policy requirement is controlling and is the only issue which needs to be discussed. In order to hold a municipality liable under § 1983, a plaintiff must prove that a violation occurred "pursuant to official municipal policy...." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471, 106 S.Ct. 1292, 1294, 89 L.Ed.2d 452, 457 (1986) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). Since the city has challenged the sufficiency of the evidence, the Joiners must establish the existence of a genuine issue of fact with regard to the official policy requirement:

... the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986).

There is no apparent disagreement about the facts relevant to the official policy question. Instead the parties disagree on the legal implication of the facts. The Joiners assert two theories to show that Case's actions were official policy:

(1) Case's appointment as city attorney authorized him to make official policy for the city with regard to arrests.

(2) City police followed the practice or custom of relying on the city attorney for instructions in filling out criminal affidavits.

The city disputes these assertions.

A. *Evidence Submitted*

In support of their first theory, the Joiners offer a copy of the minutes of the first regular July 1985 meeting of the Mayor and Board of Aldermen of the City of Ridgeland, at which the Board adopted an order appointing Smith & Case to be the regular city attorney for one year, pursuant to *Miss. Code Ann.* § 21–15–25 (annual appointment) and § 21–15–27 (appointment

of firms). *Miss. Code Ann.* § 21–15–25 provides, "The governing authorities may annually appoint an attorney-at-law for the municipality [and] prescribe his duties...." The July 1985 order prescribed various specific duties for Smith & Case and included a general authorization:

7. To do and perform such legal services of whatever description as may be necessary or incidental to the proper administration of the City of Ridgeland....

The Joiners assert that this general authorization granted Case authority identical in scope to that granted to the county attorney in *Pembaur*. The Joiners argue that *Pembaur* therefore establishes that the City of Ridgeland is liable for Case's actions.

In support of their second theory, the Joiners offer deposition testimony of Milton Case and his partner Steve Smith to show that the Ridgeland police had a practice or custom of relying on the city attorney to fill out criminal affidavits. The testimony shows that the police relied on the city attorney to identify the crimes and to state the elements of the crime and the relevant facts. The Joiners emphasize Case's statement that he did not see "anything unusual" about filling out the criminal affidavits against the Joiners. The Joiners' emphasis on that statement suggests that it should be taken as an admission that the police had a practice of having warrants signed illegally or of allowing the city attorney to dictate who signed warrants. When the statement is read in context, however, it is clear that Case referred only to filling out the affidavits, not to signing the warrants.[1] There is nothing in

---

1. In the deposition dated June 18, 1986, Case agreed that he and Steve Smith

> filled out the criminal affidavits and put them in proper form, or chose what criminal charges for them to put down on affidavits for these city policemen as a matter of course....

Noting that Smith had taken over primary responsibility for the police department "about a year and a half" before the Joiners were arrested, Case explained their practice (emphasis added):

> A. Well, Steve Smith, who is in the office, actually does the police department work. He is the city prosecuting attorney. When they call down to the office and say, "We've

got somebody that just took a garbage can off a lady's front porch and ran away with it, and threw it against her car." Now, they'll tell you the facts. I always refer them to Steve because he can tell them what crime, how to describe what crime, if any, has been committed, what to do. If he's not there, I will attempt to do it for them.

> Q. Because you are also City Attorney for Ridgeland?

> A. That's right. I do public works, and finance, and with the clerk's office and public works primarily. Steve does the police department, and fire department, and park commission.

Case's deposition to suggest that he or Smith customarily did more than word the affidavits or that they customarily dictated the procedure for signing warrants. Smith's testimony agrees fully with Case's.[2]

The Joiners do not specifically allege that the police followed a practice or custom of allowing court clerks to sign arrest warrants, and there is no evidence before the Court to indicate that arrest warrants were improperly signed on any other occasion. Both Jerry Moore and Chief Jesse Moore testify in depositions before the Court that they know of no other occasion on which a clerk signed a warrant. Chief Jesse Moore testified that it is the practice of the Ridgeland police department to have arrest warrants signed by the city judge or, if he is not available, by the justice of the peace.

### B. *Official Policy Requirement*

The Supreme Court decision in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled the holding of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In *Monroe,* the Supreme Court held that the term "person" in § 1983 could not be extended to include municipalities. In *Monell,* the Supreme Court reconsidered the legislative history of § 1983 and concluded that municipalities and other local governmental entities could be liable, but only for a violation which "implements or executes a policy statement, order, regulation or decision officially adopted and promulgated by that body's officers." 436 U.S.

> Q. But in this case, you are the one that chose the wording to put in the criminal affidavits against the Joiners?
> A. I chose the words. I looked in the statutes, I guess, and got me a code section.
>
> . . . . .
>
> Q. But you did know—I mean, this what you did on that occasion was nothing unusually for you or your law partner to do for the city police. Is that right?
> A. Well, I don't know exactly everything he's done, but I—you know, *I didn't find anything unusual about it myself.*
> Q. All right.
> A. It didn't take a City Attorney to do it, to be frank with you, you know. Just anybody could have done what I did that day.

at 690, 98 S.Ct. at 2036. The court stressed that a municipality is liable if it " 'causes' an employee to violate another's constitutional rights," *Id.* at 692, 98 S.Ct. at 2036, but not if it simply employs a wrongdoer:

> In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words a municipality cannot be held liable under § 1983 on a respondeat superior theory.

*Id.* at 691, 98 S.Ct. at 2036.

There was no question in *Monell* that the actions executed official policy. A class of female employees claimed backpay for unpaid pregnancy leaves. 436 U.S. at 660–61, 98 S.Ct.at 2020–21. The City of New York did not dispute the fact that it had maintained a policy of forcing pregnant women to take maternity leaves before the leaves were medically necessary. *Id.* at 661, 694, 98 S.Ct. at 2020, 2037. The Supreme Court indicated, however, that "by the very terms of" § 1983 the official policy requirement could be satisfied by proof that the violation occurred "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. at 2035–36. The Supreme Court indicated further that "policy or custom" could be made either by "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694, 98 S.Ct. at 2037.

2. In a deposition dated May 13, 1986, Steve Smith explained what was involved in assisting the police with criminal affidavits:

> Q. Did Mr. Case tell you whether or not he helped Mr. Wilson draw the affidavits?
> A. I'm sure he probably did, Jim. We do that all the time. We help our officers prepare the affidavits. . . .
> . . . gather the facts from people. I am called up to the police station quite frequently.
>
> . . . .
>
> A. Like I said, which is not unusual at all for us . . . to help . . . any officers, or help with any affidavits that are filed, to try to word them properly, to take the facts down, and to put the proper charge down.

In subsequent opinions, both the Supreme Court and the Fifth Circuit have stressed that the latter statement should not be interpreted to create *respondeat superior* liability for municipalities based on the acts of their officials. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Jett v. Dallas Independent School Dist.*, 798 F.2d 748 (5th Cir.1986); *Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir.1984) (en banc, per curiam, modifying 728 F.2d 762), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

In *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court reemphasized the limits of municipal liability, holding that a single violation by a low-ranking official (excessive force by a policeman) was not by itself sufficient to establish liability. The decision reaffirms that municipalities are not liable for the wrongdoing of their employees, unless an official policy causes the wrongdoing.

### 1. *Pembaur v. City of Cincinnati*

The Joiners rely principally on *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), as a precedent to establish their claim. In *Pembaur*, the Supreme Court held that in appropriate circumstances a single decision by an officer may make official policy. The Opinion of the Court identifies a decision made by the county prosecutor as the source of the official county policy which caused the violation. *Id.* at 483, 106 S.Ct. at 1300, 89 L.Ed.2d at 465. The Joiners assert that Case's decision as city attorney has the same authority as did the decision by the county prosecutor. The Court concludes, however, that there are significant differences between the cases. First, the county prosecutor in *Pembaur* was an elected official. Under Mississippi law, however, a city attorney is not elected; he is appointed by the city government as an agent for legal affairs. As such his authority is more limited. Even with regard to elected officials, *Pembaur* makes clear

that the fact that an officer has authority to make city policy in some instances does not render the government automatically liable for every decision that officer makes. Liability depends upon the officer's authority to make the particular decision being questioned by the lawsuit. In addition, unlike Case's decision, the decision by the county prosecutor was *legal* under local, state and federal law at the time it was made. Two of the concurring opinions in *Pembaur* rely on that fact in holding the county liable. *Pembaur* thus leaves open to question whether a single *illegal* decision by a local officer, without more, may be said to make official policy.

Pembaur claimed damages for an incident which occurred while a grand jury was investigating his medical practice for welfare fraud. *Id.* at 472–73, 106 S.Ct. at 1294–95, 89 L.Ed.2d at 457–58. During the investigation, the grand jury issued subpoenas for the appearance of two of Pembaur's employees. After they failed to appear, the prosecutor obtained capiases for their arrest. On May 19, 1977, two deputy sheriffs attempted to serve the capiases at Pembaur's clinic, but Pembaur refused them entrance, locking and barring the door to the interior offices of the clinic. The deputy sheriffs enlisted the aid of the Cincinnati police, whom Pembaur himself had summoned to the clinic. Neither the responding police officers nor their supervisors were able to persuade Pembaur to open the door to the deputies. The deputies then called to confer with their supervisor, who referred them to an assistant county prosecutor for instructions. After conferring with the county prosecutor, the assistant prosecutor instructed the deputies to enter the clinic forceably. Unable to force the door open, the deputies and the police used an axe to chop it down. *Id.*

After a trial, the district court dismissed all of the defendants. *Id.* at 475, 106 S.Ct. at 1296, 89 L.Ed.2d at 460. The court of appeals affirmed the dismissal of the assistant county prosecutor and the county, but reversed the dismissal of the city, finding as a matter of law that the city had maintained a policy which allowed the use

of force to serve capiases. *Id.* & n. 3. Pembaur petitioned for certiorari to review the dismissal of the county. He did not challenge the dismissal of the assistant prosecutor. *Id.* at 477, 106 S.Ct. at 1297, 89 L.Ed.2d at 461.

The county conceded that the forceful entry violated the Fourth and Fourteenth Amendments as interpreted by *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Although *Steagald* was decided after the events in *Pembaur,* the county conceded the question of retroactivity. *Pembaur,* 475 U.S. at 477 n. 5, 106 S.Ct. at 1297 n. 5, 89 L.Ed.2d at 461 n. 5. *But see Id.* at 492, 106 S.Ct. at 1305, 89 L.Ed.2d at 471 (Powell, J., dissenting). Affirming the dismissal of the county, the court of appeals emphasized that Pembaur failed to prove "anything more than that, on this *one occasion,* the Prosecutor and the Sheriff decided to force entry into his office...." *Id.* at 476, 106 S.Ct. at 1297, 89 L.Ed.2d at 461 (quoting 746 F.2d 337, 341 (6th Cir.1984)). The Supreme Court accordingly framed the question presented by the case as follows: "... whether, and in what circumstances, a decision by municipal policymakers on a single occasion may satisfy" the official policy requirement. 475 U.S. at 471, 106 S.Ct. at 1294, 89 L.Ed.2d at 457.

The six justices who agreed on the result in *Pembaur* joined in that statement of the question, expressed by Justice Brennan in the Opinion of the Court; but only a plurality joined in the formulation of the holding in part IIB of Brennan's opinion:

> ... municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* at 483, 106 S.Ct. at 1300, 89 L.Ed.2d at 465. The three concurring opinions differ substantially from the rationale of Justice Brennan. Alone among the justices, Justice Stevens maintains that municipalities may be liable by respondeat superior:

> ... Congress intended that a governmental entity be liable for the constitutional deprivations committed by its agents in the course of their duties.

At 489, 106 S.Ct. at 1303, 89 L.Ed.2d at 469 (Stevens, J. concurring). Justices White and O'Connor, on the other hand, offer a substantially more limited rationale for the result. Both note that the forceable entry was legal under federal, state and local law at the time it occurred and that the city had admitted that the procedure was accepted policy. *Id.* at 485, 106 S.Ct. at 1301, 89 L.Ed.2d at 466 (White, J.); *Id.* at 491, 106 S.Ct. at 1304, 89 L.Ed.2d at 470 (O'Connor, J.). Their concurring opinions bring into question whether municipal liability may be predicated on a single decision by an official if that decision violates existing law:

> Where the controlling law places limits on their authority, [the officials] cannot be said to have the authority to make contrary policy. *Had the sheriff or prosecutor in this case failed to follow an existing warrant requirement, it would be absurd to say that he was nevertheless executing county policy* in authorizing the forceful entry in this case and even stranger to say that the county would be liable if the sheriff has secured a warrant and it turned out that he and the magistrate had mistakenly thought there was probable cause for the warrant. *If deliberate or mistaken acts like this, admittedly contrary to local law, expose the county to liability, it must be on the basis of respondeat superior and not because the officers' acts represent local policy.*

*Id.* at 486, 106 S.Ct. at 1301–02, 89 L.Ed.2d at 467 (White, J.) (emphasis added). *See also Id.* at 491, 106 S.Ct. at 1304, 89 L.Ed.2d at 470 (O'Connor, J., concurring and stating her agreement with White's opinion).

With the exception of Justice Stevens, all the justices agreed that a municipality is not liable for every decision made by a policy-making official. Justice Brennan distinguishes between discretionary and policy-making decisions, and emphasizes that liability attaches only to decisions made by those with final authority:

Having said this much, we hasten to emphasize that *not every decision by municipal officers automatically subjects the municipality to § 1983 liability.* Municipal liability attaches only where the decision-maker possesses final authority to establish municipal authority with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. ... *The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.*

*Id.* at 481–82, 106 S.Ct. at 1299–1300, 89 L.Ed.2d at 464–465 (emphasis added, footnotes and citation omitted). In a footnote, Justice Brennan uses the example of a county sheriff to elaborate on the distinction between discretion and final authority. *Id.* at 483 n. 12, 106 S.Ct. at 1300 n. 12, 89 L.Ed.2d at 465 n. 12. Brennan suggests that while a sheriff's decision with regard to law enforcement may generally give rise to municipal liability, his decisions about employment may well be only discretionary and dependent upon the authority of other county officers. *Id.*

### 2. *Fifth Circuit Cases*

The decision in *Pembaur* is consistent with prior Fifth Circuit precedent. The Fifth Circuit has indicated that its previously announced definition of official policy is still valid. *Jett v. Dallas Independent School Dist.,* 798 F.2d 748 (5th Cir.1986). In *Jett,* the Fifth Circuit indicates that the definition of official policy applied in *Pembaur* is consistent with Fifth Circuit precedent. The Fifth Circuit accordingly reaffirms the definition of official policy established by its en banc decision in *Bennett v. City of Slidell,* 735 F.2d 861 (5th Cir.1984) (per curiam, modifying 728 F.2d 762), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985):

... we defined "official policy" as:

"1. A policy statement, ordinance, regulation, or *decision that is official-ly adopted* and promulgated by the municipality's lawmaking officers or *by an official to whom the lawmakers have delegated policy-making authority;* or

"2. A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority."

*Jett,* 798 F.2d at 759. The Fifth Circuit reiterates that a municipal officer sets policy only when he has the authority to act "in lieu of the governing body", a principle it finds reaffirmed by *Pembaur:*

The Supreme Court recently has reaffirmed that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."

*Id.* The Fifth Circuit notes with approval the distinction made in *Pembaur* between policymaking and discretion:

Moreover, that a policymaking official has discretion in the exercise of a particular function does not give rise to municipal liability for the official's exercise of such discretion unless the official also is responsible for final municipal policy respecting the function.... In this connection, *Pembaur* also seems to indicate that the mere fact that an official has discretionary, and inferentially final, authority to make particular concrete decisions in a given area does not necessarily mean that the official is a policymaker with respect to that area or those decisions.

*Id.* at 759–60 (citations omitted).

In *Bennett,* the reasoning of which is reaffirmed in *Jett,* the Fifth Circuit rejected a claim against a city based upon the actions of the city attorney, although it affirmed the personal liability of the attorney. *Bennett,* 728 F.2d at 765. The plain-

tiff alleged that the city attorney was deliberately slow to complete his review of the liquor license application for the plaintiff's club and that the attorney then advised the city counsel to delay the application. *Id.* The plaintiff alleged also that the city building inspector wrongly refused to approve his building and that the city attorney and the inspector together caused the disruption of his electric service. *Id.* The Fifth Circuit found, however, that neither of the officials had "authority to act in lieu of the counsel to set or modify city policy." 728 F.2d at 770. The court noted that under Louisiana law liquor licenses are issued by the city counsel and that the city attorney is employed only to give legal advice. *Id.* at 765, 769.

In *Bennett,* the Fifth Circuit highlighted the distinction between the authority of appointed and elected officials, noting the broad policymaking authority sometimes conferred on elected officials in local government. 735 F.2d at 862 (modifying 728 F.2d at 762.) The Fifth Circuit stated that it rejected the line of authority

> represented in particular by our opinion in *Schneider v. City of Atlanta,* 628 F.2d 915 (5th Cir.1980), which would permit policy or custom to be attributed to the city itself by attribution to any and all city officers endowed with final or supervisory power or authority.

735 F.2d at 862. The Fifth Circuit reaffirmed, however,

> the writing in *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980), as it relates to the officer who obtains policymaking authority by virtue of the office to which that officer is elected.

*Id.*

The reference to *Familias Unidas* emphasizes the distinction between the authority of elected and appointed officials. That emphasis is consistent with *Pembaur,* which predicates liability on the decision of the elected county prosecutor. In *Familias Unidas* the Fifth Circuit explained at length the rationale for recognizing the broad authority of elected county officials. That rationale is consistent with the explanation by Justice Brennan in *Pembaur,* 475

U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12, 89 L.Ed.2d at 465 n. 12 (example of the sheriff), which is noted by the Fifth Circuit in *Jett,* 798 F.2d at 759–60. In *Familias Unidas* the Fifth Circuit explained the rationale as follows:

> Because of the unique structure of county government in Texas, the judge—like other elected county officials, such as the sheriff and treasurer—holds virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein.... Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under Section 1983.

619 F.2d at 404. The court nevertheless concluded that the acts of the county judge did not set county policy with regard to the issue in question, but rather that his role was merely to effectuate the policy of the state. The plaintiffs thus could not recover from the county. *Id.* at 404–405.

The Fifth Circuit applied the reasoning of *Familias Unidas* in *Van Ooteghem v. Gray,* 628 F.2d 488, 494–95 (5th Cir.1980), *cited with approval in Pembaur,* 475 U.S. at 477 n. 4, 106 S.Ct. at 1297 n. 4, 89 L.Ed.2d at 461 n. 4, to uphold county liability based upon an illegal discharge ordered by a county treasurer, an elected official. The Court noted that under Texas law the treasurer "had complete authority for the hiring and firing of personnel within the Treasury." *Id.* at 495.

In *Bennett,* 735 F.2d at 862, the the Fifth Circuit indicated the lesser authority of appointed officials by rejecting the reasoning of *Schneider v. City of Atlanta,* 628 F.2d 915. The Plaintiff in *Schneider* alleged that the director of the Atlanta Bureau of Corrections retaliated against her in violation of the First Amendment while she was employed at the Bureau. The Court found the facts in the record insufficient to estab-

**1370**

lish municipal liability, but it remanded the question for retrial with a note that the director's title suggested that he had authority to bind the city. 628 F.2d at 920 & n. 6.

The distinction drawn by the Fifth Circuit between elected and appointed local officials is consistent with the Supreme Court decision in *Pembaur.* Under Ohio law, both the sheriff and the county prosecutor are elected officials of the county. *Ohio Rev.Code Ann.* §§ 311.01 (sheriff), 309.01 (county prosecuting attorney) (Baldwin 1979); *Pembaur,* 475 U.S. at 484, 106 S.Ct. at 1301, 89 L.Ed.2d at 466. The Supreme Court concluded, therefore, that both the sheriff and the county prosecutor had the authority to order the forceable entry of third party property to serve capiases, a procedure which was "not then illegal under federal, state or local law." At 485, 106 S.Ct. at 1301, 89 L.Ed.2d at 466 (White, J., concurring).

### C. *No Municipal Liability*

██ In light of the foregoing, the Court concludes that the decision in *Pembaur* does not control the Joiners' case and does not establish that the City of Ridgeland is liable for Case's actions as city attorney. Under Mississippi law a city attorney is not an elected official of the municipality. He is, instead, an employee or agent of the city whose duties are prescribed by his order of appointment. *Miss.Code Ann.* § 21–15–25. Moreover, unlike in *Pembaur,* Case's decision to allow a city clerk to sign the Joiners' arrest warrants was plainly illegal under the statutory law of Mississippi. *Miss. Code Ann.* § 99–15–5. The Court is of the opinion that the situation is like the one described by Justice White in *Pembaur:*

> If deliberate or mistaken acts like this, admittedly contrary to local law, expose the county to liability, it must be on the basis of *respondeat superior* and not because the officers' act represents local policy.

At 486, 106 S.Ct. at 1302, 89 L.Ed.2d at 467. The Court concludes therefore that the Joiners' claims are analogous to those

made against the City of Slidell in *Bennett,* 728 F.2d 762, *modified,* 735 F.2d 861.

Examining the evidence in light of the two-part definition of official policy set out in *Bennett,* 735 F.2d at 862, and reaffirmed in *Jett,* 798 F.2d at 759, the Court concludes that the city is entitled to summary judgment.

With regard to the first part of the definition, the Court finds that there is no evidence that the city lawmakers attempted to delegate to the city attorney the authority to establish the procedure for issuing warrants. The mayor and board of aldermen had no authority to do so, since the procedure is established by a statute of the State of Mississippi. Accordingly, the general duty imposed upon the city attorney to perform such legal services as necessary "to the proper administration of the City of Ridgeland" cannot fairly be construed to confer such authority. The Joiners have come forward with no evidence that the city lawmakers ever attempted or even considered such an illegal delegation.

With regard to the second part of the definition, the Court finds that there is no evidence of a consistent, widespread practice or custom which caused the illegal arrest of the Joiners. The evidence submitted by the Joiners shows only that police customarily relied on the city attorney to identify the crime involved, the elements of the crime, and the relevant facts for criminal affidavits. The Court concludes that the police practice of accepting advice from the city attorney cannot be said to have caused the illegal arrest of the Joiners. Under *Bennett* a bad practice must be attributable to the governing body of the municipality by actual or constructive knowledge. There is no evidence that the governing body of Ridgeland was unjustified in believing that the city attorney was aware of and would follow the law. There is no evidence of a custom or practice of allowing the municipal clerk to sign arrest warrants. The Court concludes that under both parts of the *Bennett* definition, the Joiners have failed to establish the existence of an official policy which caused their illegal arrest. The city is accordingly enti-

tled to summary judgment on the § 1983 claim.

The Court has considered carefully the propriety of granting summary judgment on a legal issue as complex as the present one. A review of the cases suggests that official policy in the context of § 1983 has yet to be finally defined. Having considered the cases, however, the Court is unable to perceive in the material before it evidence sufficient to justify subjecting the City of Ridgeland to a trial. *See Celotex,* 477 U.S. at ——, 106 S.Ct. at 2554, 91 L.Ed.2d at 276. The material reveals no dispute of fact to be resolved by trial, and the facts which appear do not support liability under the present law. Accordingly, the Court will grant summary judgment for the city.

### III. NO *BIVENS*-TYPE CLAIM

■ The Joiners also attempt to assert their cause of action as a *Bivens*-type action directly under the Constitution. *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, *Bivens* may not be used to circumvent the requirements of § 1983.

> When Congress has provided an adequate alternative remedial scheme, which is intended to be a substitute for direct recovery under the Constitution, a *Bivens*-type action is inappropriate.

*Williams v. Bennett,* 689 F.2d 1370, 1390 (11th Cir.1982).

> It would be incongruous to hold that the doctrine of *respondeat superior* can be invoked against a municipal corporation in an action under 28 U.S.C. § 1331 [a *Bivens*-type action] when the doctrine has no application in an action under 42 U.S.C. § 1983.

*Dean v. Gladney,* 621 F.2d 1331, 1336 (5th Cir.1980). *See also Carpenter v. City of Fort Wayne, Ind.,* 637 F.Supp. 889, 891–92 (N.D.Ind.1986). Accordingly, the Joiners have no cause of action under *Bivens.*

IT IS THEREFORE ORDERED that summary judgment be entered for the City of Ridgeland. A separate judgment will be entered in accordance with this opinion.